FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 21, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NATHAN S.,[1]<br><br>                    Plaintiff,<br><br>        vs.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[2]<br><br>                    Defendant. | No. 1:19-cv-03144-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 15, 16 |

Before the Court are the parties' cross-motions for summary judgment. ECF

Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned

identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration.

Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs

the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 15, and grants Defendant's motion, ECF No. 16.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

ORDER - 4

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On June 25, 2015, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of June 14, 2013.  Tr. 67, 169-74. The application was denied initially, and on reconsideration. Tr. 95-103; Tr. 108-14.  Plaintiff appeared before an administrative law judge (ALJ) on August 24, 2017.  Tr. 34-66.  On June 11, 2018, the ALJ denied Plaintiff's claim.  Tr. 12-29.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 25, 2015.  Tr. 16.  At step two, the ALJ found that Plaintiff has the following severe impairments:  anxiety disorder, migraine, and left knee impairment.  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed

impairment. Tr. 18. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff can] occasionally climb ladders, ropes, or stairs; occasionally stoop, kneel, crouch, and crawl; avoid concentrated exposure to extreme cold, extreme heat, excessive vibration and workplace hazards such as dangerous machinery and unprotected heights; and should not work in an environment with very loud noises equivalent to a gun shot or where explosion is a normal part of the work environment. Additionally, [Plaintiff] can perform simple routine tasks in a simple routine environment involving simple work-related decisions. He can have superficial interaction with co-workers and occasional superficial interaction with the general public, including the abilities to give and receive directions, accept instructions, participate in training, ask routine work-related questions, and can accept direction from a supervisor, but should not be required to be involved in extensive team-work, problem-solving, or responsible for any intense communication with members of the public such as clients, etc.

Tr. 20.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 24. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as marker, small products assembler, and inspector/hand packager. Tr. 25. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application though the date of the decision. *Id.*

On May 7, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims;

2. Whether the ALJ properly evaluated the medical opinion evidence; and

3. Whether the ALJ fully and fairly developed the record.

ECF No. 15 at 2.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting his symptom claims. ECF No. 15 at 3-13. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The

claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929 (c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 21.

First, the ALJ found Plaintiff's claims of disabling migraines, knee pain, and mental health symptoms inconsistent with the longitudinal record, which demonstrates a lack of treatment and minimal symptoms. Tr. 21-22. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). Medical

evidence is a relevant factor, however, in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929I(2). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ reasoned that the longitudinal record did not support Plaintiff's allegations of disabling physical and mental health symptoms. Tr. 21. Regarding his physical symptoms, Plaintiff did not seek treatment for his physical symptoms related to the gunshot wounds after his initial hospital visit. *Id.* A CT scan showed no acute brain abnormality. *Id.* (citing Tr. 277-78). Plaintiff's physical consultative examination demonstrated generally normal findings. Tr. 21 (citing Tr. 352-54). Although Plaintiff alleges limitations due to a knee impairment, including an inability to put pressure on his knee, Tr. 47, he did not seek treatment for the knee symptoms and his gait, knee strength and range of motion were normal at the consultative examination, though he had some tenderness. Tr. 21-23, 351-53. While Plaintiff alleges pain severe enough to cause him to drop to the floor, and flashbacks that cause physical symptoms multiple times a day, including nausea, headaches and minor light sensitivity, Tr. 349, after the initial hospital visit, there are no visits for headaches, pain, or nausea. The ALJ reasonably

concluded that the medical evidence does not support the severity of physical limitation alleged by Plaintiff.

Regarding his mental health symptoms, Plaintiff alleges difficulty with concentration, memory and task completion, however, his mental consultative examination demonstrated normal concentration, memory, persistence, social interaction and attention. Tr. 23 (citing Tr. 339-46). Plaintiff's full-scale IQ is 94 and his scores on the memory subtests placed him in the thirty-fourth to fifty-fifth percentile. Tr. 343-44. Plaintiff also had gaps in his mental health treatment, and the records from the periods he did receive treatment contained generally normal findings. Tr. 23 (citing Tr. 308, 332, 336). The ALJ reasonably concluded that the medical evidence does not support the severity of the mental limitations alleged by Plaintiff.

Plaintiff argues the ALJ's analysis was not sufficiently specific and that the records demonstrate abnormalities that support Plaintiff's allegations. ECF No. 15 at 11-12. While the ALJ's cited records show some minor abnormalities like mild irritability/anxiety, mildly impaired attention/concentration at some appointments, and constricted affect, Tr. 308, 332, 336, they also demonstrate generally normal thoughts, speech, memory, attention, concentration and cognitive functioning, Tr. 308, 332, 336. Plaintiff cites to other records demonstrating some abnormalities. ECF No. 15 at 12 (citing, e.g., Tr. 284 (mildly disheveled, depressed/anxious

mood, constricted affect, poor attention/concentration, partial insight, but good eye contact, average intelligence, good memory); Tr. 295 (mildly anxious, constricted affect, but otherwise normal exam); Tr. 302 (mildly irritable and anxious, but otherwise normal exam); Tr. 308 (mildly irritable, constricted affect, but otherwise normal exam); Tr. 312 (anxious, reports problems sleeping); Tr. 334 (dysthymic, irritable mood), Tr. 336 (mildly impaired concentration, mildly anxious, constricted affect, otherwise normal exam); Tr. 338 (somewhat agitated and anxious); Tr. 351 (some emotional distress, a bit anxious, makes very little eye contact, otherwise normal exam)). Though Plaintiff points to records generally showing mild abnormalities, the ALJ's interpretation of the evidence is reasonable and will not be disturbed. *See Rollins*, 261 F.3d at 857. The ALJ reasonably concluded that the longitudinal record is inconsistent with Plaintiff's reports of disabling physical and mental health symptoms. This finding is supported by substantial evidence.

Second, the ALJ found Plaintiff's activities inconsistent with his allegations of significantly impaired social functioning. Tr. 23. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at

603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ reasoned Plaintiff's ability to travel to Leavenworth, maintain relationships with two medical providers and his girlfriend, socialize with his girlfriend's parents and care for his child demonstrated an ability to engage in some social interactions, which were inconsistent with his allegations of significant social barriers. Tr. 23. The records demonstrate Plaintiff has had some difficulties in maintaining relationships. He reported he and his girlfriend had been "off and on" and she had fallen in love with one of his friends. Tr. 340-41. Additionally, he has not maintained a relationship with any of his own family members and he previously got in a fight with a staff at Union Gospel Mission. Tr. 341. He also reported he is close with his girlfriends' parents. *Id.* Plaintiff shops one to two times per week, goes out to eat and enjoys spending time with his friends, though he reported difficulty being around too many people. Tr. 202-03. He reported getting along well with authority figures, unless he is asked something he does not know the answer to, which causes him to be flustered. Tr. 205. He reported

previously getting terminated due to tardiness and having an issue with a coworker. *Id.* Though the record demonstrates some social difficulties, the ALJ reasonably concluded that Plaintiff's activities are inconsistent with Plaintiff's reported severe limitation in social activities. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptoms complaints.

Third, the ALJ found Plaintiff's gaps in treatment inconsistent with his allegations of disabling symptoms. Tr. 23. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). And evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment). Social Security Ruling (SSR) 16-3p instructs that an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p at *8 (March 16, 2016), *available at* 2016 WL 1119029.

The ALJ reasoned that Plaintiff had insurance, with no co-pay for appointments, but did not seek any physical care after his initial hospital visit. Tr. 23. Plaintiff sought mental health treatment in 2015 but had a gap in treatment from the end of 2015 through April 2016 and stopped treatment in 2017. *Id.* Plaintiff reported he had difficulty accessing transportation in 2017 but the ALJ considered that Plaintiff did not explain why he did not look for care closer to home. *Id.*

Plaintiff argues the ALJ failed to consider Plaintiff's other reasons for not seeking additional care, such as because he was previously prescribed narcotic pain medications for his knee, which he did not want to take due to fear of addiction, *Id.* at 4 (citing Tr. 49-50, 52-53); because he had intolerable side effects from prior medications, ECF No. 15 at 5 (citing Tr. 50-51); his religious beliefs prevent him from taking strong pain medications, ECF No. 15 at 5 (citing Tr. 50); and he did not undergo additional treatment for his gunshot wound because the treatment was elective, and he would have to pay for the treatment out of pocket, ECF No. 15 at 5 (citing Tr. 40-41, 52). ECF No. 15 at 4-7. He further contends he was unable to access mental health care due to transportation issues, and ; his mental health treatment had been ineffective; and he did not seek treatment during the gap in 2016 because he had temporarily relocated. ECF No. 15 at 6-7. (citing Tr. 378-79).

ORDER - 16

While Plaintiff offers several reasons for not taking narcotic pain medications, he does not offer any explanation as to why he did not pursue any other forms of treatment for his knee such as physical therapy or trials of non-narcotic medications. There is no evidence Plaintiff sought any treatment for his reported migraines. While Plaintiff reports difficulties continuing mental health treatment due to a temporary move and then transportation difficulties getting to his counselor's location, Plaintiff offers no explanation as to why he did not seek any mental health care where he temporarily lived, nor if he sought other care once he began having transportation difficulties. There is no evidence Plaintiff sought other counseling or a prescriber for mental health medications.

On this record, the ALJ reasonably concluded that the longitudinal record, Plaintiff's activities of daily living, and Plaintiff's failure to seek treatment and gaps in treatment are inconsistent with Plaintiff's symptom claims. These are clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's symptoms complaints.

## B. Medical Opinion Evidence

Plaintiff contends the ALJ improperly considered the opinions of Neil Anderson, LICSW, Mary Pellicer, M.D., and Guillermo Rubio, M.D. ECF No. 15 at 13-19.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161 (alteration in original); *see* 20 C.F.R. § 416.913 (2013). However, an ALJ is required to consider evidence from non-acceptable medical sources, such as therapists. 20 C.F.R. § 416.913(d).[3] An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion. *Ghanim*, 763 F.3d at 1161.

---

[3] The regulation that requires an ALJ's consider opinions from non-acceptable medical sources is found at 20 C.F.R. § 416.927(f) for claims filed after March 27, 2017. The Court applies the regulation in effect at the time of Plaintiff's filing.

### 1. Mr. Anderson

Mr. Anderson, a treating counselor, provided an opinion on Plaintiff's functioning on June 29, 2015. Tr. 279-81. Mr. Anderson opined Plaintiff has mild limitations in the ability to: remember locations and work-like procedures; understand/remember very short and simple instructions; carry out very short and simple instructions; make simple work-related decisions; and maintain socially appropriate behavior and adhere to standards of cleanliness; moderate limitations in the ability to understand and remember detailed instructions; carry out detailed instructions; maintain an ordinary routine without special supervision; interact appropriately with the public; and ask simple questions or request assistance; and marked limitations in the ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday/workweek without interruptions from symptoms and perform at a consistent pace without an unreasonable number/length of rest periods; accept instructions and respond appropriately to criticism; get along with coworkers without distracting them or exhibiting behavioral extremes; respond appropriately

to changes in the work setting; travel to unfamiliar places or use public transportation; and set realistic goals or make plans independently. *Id.*

Mr. Anderson also opined Plaintiff had mild/moderate limitations in his activities of daily living, moderate limitations in social functioning and marked limitations in maintaining concentration, persistence or pace. Tr. 281. Additionally, he opined Plaintiff would be off task 21 to 30 percent of the time and would miss four or more days per month if he were to work full-time. *Id.* Mr. Anderson opined Plaintiff has such marginal adjustment that even a minimal increase in mental demands or changes in the environment would be predicted to cause Plaintiff to decompensate. *Id.*

The ALJ "did not adopt" Mr. Anderson's opinion but did not indicate the amount of weight given to the opinion. Tr. 22, 24. As Mr. Anderson is not an acceptable medical source, the ALJ was required to give germane reasons to reject the opinion. *See Ghanim*, 763 F.3d at 1161.

First, the ALJ found Mr. Anderson's opinion consisted of checked boxes indicating Plaintiff has limitations in virtually all areas without explanation for the "extreme limitations." Tr. 22. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. However, the fact that an opinion was provide in a check-box form alone does not provide a germane reason to reject the opinion. *Popa v. Berryhill*, 872

F.3d 901 (9th Cir. 2017). Further, it is not a proper basis to reject an opinion that is supported by treatment notes. *See Garrison*, 759 F.3d at 1014 n. 17.

Here, Mr. Anderson's opinion contains only checked boxes, without any explanations. Tr. 279-81. The treatment notes from Plaintiff's sessions with Mr. Anderson prior to the date of the opinion demonstrate Plaintiff had some anxiety, increases in agitation and he initially reported "great difficulty sleeping" but he later reported feeling "a bit better" and improved sleep. Tr. 310-12, 317. The records pre-dating the opinion do not contain any mental status examinations, testing or notes regarding Plaintiff's memory, concentration, social functioning, or other areas of functioning addressed in the opinion. While Plaintiff argues Mr. Anderson's treatment notes post-dating the opinion provide support for the opinion, such records do not provide support for Mr. Anderson's opinion at the time he rendered it. *See* ECF No. 15 at 16-17. As Mr. Anderson's opinion lacked explanations, this was a germane reason to reject Mr. Anderson's opinion.

Second, the ALJ reasoned Mr. Anderson had treated Plaintiff for a limited time when he rendered his opinion. Tr. 22, 24. The number of visits a claimant had with a particular provider is a relevant factor in assigning weight to an opinion. 20 C.F.R. § 416.927(c). The regulations direct that all opinions, including the opinions of examining providers, should be considered. 20 C.F.R. § 416.927(b), (c). At the time he rendered the opinion, Mr. Anderson had treated Plaintiff for

five weeks and had seen him on four occasions. Tr. 310-12, 317. The ALJ's

reasoning that the opinion should be afforded less weight as the provider treated

Plaintiff for a short period before rendering the opinion is inconsistent with the

ALJ affording substantial weight to the opinion of Dr. Guillermo Rubio, a non-

examining source, and affording some weight to Dr. Mary Pellicer, who examined

Plaintiff on only one occasion. Tr. 22, 24. This was not a germane reason to reject

the opinion. However, as the ALJ gave a germane reason to reject the opinion, this

error is harmless. *See Molina,* 674 F.3d at 1115.

Third, the ALJ found Plaintiff had not yet started psychotropic medication at

the time of Mr. Anderson's opinion. Tr. 24. An ALJ may discredit opinions that

are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195; *Warre v.*

*Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining

that conditions effectively controlled with medication are not disabling for

purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d

1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can

undermine a claimant's complaints of debilitating pain or other severe limitations).

Mr. Anderson's records indicate Plaintiff had not yet begun taking medication

through the date of the June 2015 opinion. Tr. 311-12. Plaintiff then tried

mirtazapine, followed with taking Seroquel and then venlafaxine and prazosin. Tr.

304, 307, 309. Plaintiff reported improvement in his symptoms with medication.

Tr. 295, 299.  Plaintiff also reported improvement with eye movement desensitization and reprogramming (EMDR) sessions and Mr. Anderson noted Plaintiff was making slow progress.  Tr. 299, 305, 307.  In September 2015, Plaintiff reported prazosin was very helpful in treating his anxiety, and he was observed as having normal memory, attention, concentration, and speech, with mildly anxious mood and constricted affect.  Tr. 295-96.  While the records demonstrate Plaintiff experienced some side effects from medications, and he reported ongoing symptoms even with treatment, Tr. 295, the record overall shows Plaintiff experienced some improvement with treatment after Mr. Anderson's opinion.  As such, the ALJ gave germane reasons to reject Mr. Anderson's opinion.

While Plaintiff argues the ALJ's decision is not supported by the medical opinion evidence, and the ALJ had a duty to further develop the record, this argument is not supported by the evidence, as discussed further *infra*.  ECF No. 15 at 14-17.  The ALJ considered the opinions of Mr. Anderson and the psychological consultants and relied on Plaintiff's records. Tr. 19, 21-24.  There is no ambiguous evidence nor did the ALJ find the record is inadequate to allow for proper evaluation of the evidence; as such, the ALJ's duty to develop the record was not triggered.  *See Tonapetyan*, 242 F.3d at 1150 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).

*2. Dr. Pellicer and Dr. Rubio*

Dr. Mary Pellicer performed a consultative examination and diagnosed Plaintiff with chronic headache pain, bipolar, PTSD, ADD, OCD and chronic left knee pain. Tr. 347-54. Dr. Pellicer opined Plaintiff can stand and walk for at least six hours, and can sit for six hours in a day, with "more frequent" breaks due to knee pain. Tr. 353. She opined Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently, and he can bend, squat, crawl and kneel occasionally. Tr. 354. Dr. Pellicer opined Plaintiff does not need an assistive device and does not have any postural or manipulative limitations. *Id.*

Dr. Rubio, a non-examining source, opined Plaintiff can stand and walk six hours in a day and can sit for six hours. Tr. 89. He opined Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently, can occasionally climb ladders/ropes/scaffolds, kneel, crouch and crawl, and should avoid concentrated exposure to noise, vibration and hazards. Tr. 89-90.

The ALJ gave Dr. Rubio's opinion significant weight, Tr. 23, and gave some weight to Dr. Pellicer's opinion, Tr. 22. The ALJ rejected Dr. Pellicer's opinion that Plaintiff would need extra breaks due to his knee impairment, instead concurring with Dr. Rubio that Plaintiff does not need additional breaks. *Id.* Generally, an ALJ should accord more weight to the opinion of an examining physician than to that of a non-examining physician. *See Andrews*, 53 F.3d at

ORDER - 25

1040-41. However, the opinion of a nonexamining physician may serve as substantial evidence if it is "supported by other evidence in the record and [is] consistent with it." *Id*. at 1041.

First, the ALJ found Dr. Pellicer's opinion that Plaintiff would need extra breaks due to knee pain is inconsistent with the record. Tr. 22. Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d a1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631. The ALJ reasoned that the record demonstrates there is no medical evidence of Plaintiff's knee impairment outside of Dr. Pellicer's examination. Tr. 22. None of the medical records mention a knee impairment or knee symptoms outside of Dr. Pellicer's examination. Plaintiff also previously reported no difficulties with lifting, squatting, bending, standing, walking, or kneeling. Tr. 204. Dr. Rubio's opinion that Plaintiff is capable of light work, without the need for extra breaks, is more consistent with the evidence.

Second, the ALJ found Dr. Pellicer's opinion inconsistent with Plaintiff's lack of care for his alleged knee impairment. Tr. 22. An ALJ may discredit a claimant's symptom complaints if the claimant fails to show good reason for failing to follow treatment recommendations. *Smolen*, 80 F.3d at 1284. However, the fact that a claimant fails to pursue treatment is not directly relevant to the

weight of a medical provider's opinion. *See* 20 C.F.R. § 416.927(c). The lack of treatment may be considered as a part of the opinion's consistency with the record as a whole. *See Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.

While Plaintiff argues he did not seek treatment for his knee because he previously was only offered narcotic pain medication, which he would not take due to risk of addiction, there is no evidence Plaintiff sought any treatment for his knee during the relevant adjudicative period. ECF No. 15 at 4. There is also no evidence Plaintiff complained of knee symptoms or limitations due to his knee during the relevant period. Plaintiff reported being able to walk five miles before needing a five-minute break and having no physical limitations. Tr. 204. As such, the record demonstrates a lack of any reported symptoms, outside of Dr. Pellicer's examination, and a lack of seeking any treatment for his knee. This evidence is consistent with Dr. Rubio's opinion. Dr. Rubio's opinion is supported by other evidence, and is consistent with the record, thus it amounted to substantial evidence to support the ALJ's rejection of Dr. Pellicer's opinion.

Plaintiff contends Dr. Rubio improperly gave Dr. Pellicer's opinion great weight, without an explanation for rejecting the need for extra breaks, and the ALJ's reliance on Dr. Rubio's opinion was thus an error. ECF No. 15 at 18-19. However, any error in rejecting Dr. Pellicer's opinion would be harmless. Plaintiff argues the rejection would be harmful because Dr. Pellicer opined Plaintiff needs

additional breaks, which is disabling according to the vocational expert. ECF No. 15 at 18 (citing Tr. 63). Plaintiff's citation does not contain any reference to additional breaks. The vocational expert testified that if an individual needed two unscheduled twenty-minute breaks per day, they would not be competitively employable. Tr. 62. The expert also testified that an individual who would be off-task fifteen percent of the day or would miss at least one and a half days per month would not be competitively employable. Tr. 61.

Dr. Pellicer opined Plaintiff would need more frequent breaks but did not quantify the amount of time Plaintiff would be off-task or would miss work due to the extra breaks. Tr. 353. She opined Plaintiff can stand and walk for six hours, and can sit for six hours, in an eight-hour workday, indicating Plaintiff can work a full workday. *Id.* There is no indication that the need for more frequent breaks would rise to the level of being off-task fifteen percent of the day, missing one and a half days or more per month, or having two unscheduled twenty-minute breaks per day. As such, any error in rejecting Dr. Pellicer's opinion would be harmless. *See Molina,* 674 F.3d at 1111.

### C. ALJ's Duty to Develop the Record

Plaintiff contends the ALJ erred by failing to fully and fairly develop the record. ECF No. 15 at 19-21. The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where,

as here, the claimant is represented by counsel. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *see also Tonapetyan*, 242 F.3d at 1150; *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *See Tonapetyan*, 242 F.3d at 1150 (quoting *Smolen*, 80 F.3d at 1288).

First, Plaintiff asserts the ALJ had a duty to develop the record, because she did not fully rely on the opinion evidence in preparing the RFC. ECF No. 15 at 20. It is the ALJ's responsibility to resolve conflicts in the medical evidence and to determine the RFC based on the evidence. *See Andrews*, 53 F.3d at 1039; 20 C.F.R. § 416.946(c). Plaintiff concedes the ALJ is not required to rely on an opinion in forming the RFC but argues the ALJ's decision was not supported by substantial evidence due to the rejection of the opinions. ECF No. 17 at 10. While the ALJ did not fully rely on the opinions, the ALJ's opinion is supported by substantial evidence. The opinions in the file opine Plaintiff does not have any psychological limitations. Tr. 73-74, 86-87, 345. The ALJ considered the opinions but found the later submitted evidence supported some mental limitations based on the combination of psychological symptoms and pain. Tr. 22.

The ALJ considered the psychological consultative examination, which demonstrated Plaintiff had an average IQ and found he had an average ability to

understand, concentrate, persist, interact socially and adapt. Tr. 18, 20 (citing Tr. 341-45). The ALJ considered Plaintiff's activities, including his ability to maintain therapeutic relationships, a romantic relationship, and relationships with his girlfriends' parents. Tr. 23. The ALJ also considered Plaintiff's records, showing Plaintiff had generally normal mental clinical findings. Tr. 23 (citing Tr. 308, 314, 332, 336). The ALJ's decision was supported by substantial evidence and thus the ALJ's duty to develop the record was not triggered by an insufficient record.

Second, Plaintiff further contends the ALJ had a duty to develop the record because the opinions were inconsistent. ECF No. 15 at 20-21. Plaintiff does not cite to any authority to support such argument. Inconsistent opinions may trigger the duty to develop the record, but the adjudicator first looks at the relevant evidence to determine if a decision can be made based on the current evidence. 20 C.F.R. § 416.920b. Here, there was sufficient evidence for the ALJ to make a determination, thus the inconsistent opinions did not trigger a duty to develop the record.

Third, Plaintiff asserts the ALJ had a duty to develop the record because Mr. Anderson's opinion was "under-explained." ECF No. 15 at 17. However, the ALJ considered Mr. Anderson's opinion and the records from that time period and did not find the evidence warranted further development of the record. Tr. 22, 24. Mr.

Anderson's lack of explanation for his opinion did not trigger a duty to develop the record. Thus, Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED January 21, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE